UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No: 1:09-CR-89 |
| v. ) | |
| ) | |
| ERIC M. COUSIN. ) | Chief District Judge Curtis L. Collier |
| ) | |

**MEMORANDUM**

Before the Court are Defendant Eric Cousin's ("Defendant") motions to suppress evidence seized as the result of a traffic stop pursuant to the Fourth Amendment (Court File No. 16) and the Equal Protection Clause of the Fourteenth Amendment (Court File No. 22). The Court referred the motions to United States Magistrate Judge William B. Mitchell Carter pursuant to 28 U.S.C. § 636(b)(1) (Court File Nos. 14, 24). Judge Carter held a hearing and issued a Report and Recommendation ("R&R") on each motion (Court File Nos. 30, 34). Defendant filed timely objections (Court File Nos. 35, 36) to the R&Rs and the Government responded (Court File Nos. 37, 38). For the following reasons, the Court will **ACCEPT** and **ADOPT** the Reports and Recommendations (Court File Nos. 30, 34). Defendant's motions to suppress (Court File Nos. 16, 22) will be **DENIED**.

I.  **RELEVANT FACTS**

The Court incorporates those portions of the magistrate judge's recitation of the facts to which objections have not been made, and only recounts the facts underlying the issues addressed in this Memorandum. On January 27, 2009, Chattanooga Police Department Officer Matt Crider

("Officer Crider") was on routine patrol in the area of Chattanooga, Tennessee, called East Chattanooga. According to Officer Crider, he witnessed a white Chevrolet Suburban driven by Defendant fail to make a complete stop at an intersection.[1] He followed the vehicle and noticed Defendant, the driver and sole occupant, was not wearing a seatbelt and the passenger side mirror was cracked. After following Defendant for some distance Officer Crider turned on his lights, which activated the camera in his patrol car.[2]

As Officer Crider approached Defendant's vehicle, he noticed Defendant was visibly nervous, with shaking hands and a quivering voice. Defendant asked Officer Crider for "a break" because he had a suspended license. Officer Crider recognized Defendant from a previous arrest for misdemeanor possession of a handgun and asked Defendant if he had any "guns or dope" in the vehicle. Defendant denied it and, according to Officer Crider, gave verbal consent to search the vehicle. Officer Crider then went back to his patrol car to confirm Defendant's license was suspended. He watched Defendant through the rear view mirror of Defendant's vehicle and saw Defendant lean toward the floor of the vehicle. Officer Crider then approached the vehicle and asked Defendant about his actions. He ordered Defendant out of the vehicle and performed a pat-down search. He then started searching the interior of the vehicle and found marijuana under the cup holder in the center console. At that point, Officer Crider placed Defendant under arrest and allegedly read Defendant his *Miranda* rights. Officer Crider searched the vehicle further and found twelve grams of cocaine and a .38 caliber handgun with ammunition.

---

[1] Defendant disputes whether Officer Crider would have been able to see this infraction.

[2] The audio was apparently not working on the camera and no audio evidence is available.

## II.  STANDARD OF REVIEW

This Court must conduct a *de novo* review of those portions of the report and recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C). The Court has "broad discretion" in conducting a *de novo* determination and is not required to rehear any contested testimony. *United States v. Raddatz*, 447 U.S. 667, 674, 681 (1980). "Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on the magistrate's proposed findings and recommendations." *Id.* at 676.

## III.  DISCUSSION

Defendant moved to suppress evidence under the Fourth Amendment and the Fourteenth Amendment. Judge Carter recommended the motions to suppress be denied. Defendant timely objected to the findings in the R&Rs, arguing the evidence obtained from the vehicle and incriminating statements made by Defendant should be suppressed.

### A.  Fourth Amendment

Judge Carter determined the traffic stop of Defendant was not illegal and the detention was not excessive (Court File No. 30, 7-8). He also concluded Defendant validly consented to the search of the vehicle and his inculpatory statements were voluntarily made (*id.* at 9-10). Thus, Judge Carter recommended the motion to suppress evidence under the Fourth Amendment be denied. Defendant objects to the conclusions Officer Crider had probable cause to stop Defendant, the scope of the detention was reasonable, valid consent was given, and the statements were not fruit of the poisonous tree. Defendant also appeals Judge Carter's decision to exclude evidence of other traffic

stops conducted by Officer Crider.

### 1. Traffic Stop

Defendant objects to Judge Carter's credibility determination and argues Officer Crider could not have witnessed a rolling stop at the intersection and had no probable cause to stop Defendant.

"[S]o long as the officer has probable cause to believe a traffic violation has occurred or was occurring, the resulting stop is not unlawful . . . . and it is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop." *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993). Probable cause is "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). An officer's subjective motives are irrelevant in determining whether a traffic stop is reasonable under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 813 (1996).

Defendant does not challenge the legality of a traffic stop for failing to come to a complete stop at a stop sign, Defendant instead disputes Officer Crider's assertion he witnessed the infraction. If Officer Crider did not see a traffic violation, he would not have probable cause to stop Defendant. Judge Carter determined Officer Crider was a credible witness and Defendant's evidence, a photograph of the intersection, was insufficient to discredit Officer Crider's testimony.

Officer Crider testified he was traveling westbound on Stuart Street, although he could not pinpoint his exact location on an aerial photograph of the area, and saw Defendant traveling northbound on Noah Street and failing to completely stop at the stop sign at the intersection of Noah and Stuart (Court File No. 39, 32-38). Defendant contends Officer Crider's view of the intersection would have been obscured, which Officer Crider denied (*id.* at 39-40). Officer Crider turned onto Noah to follow Defendant and noticed the seat belt violation when Defendant turned onto Wilder

4

Street from Noah (*id.* at 45-46). Officer Crider stopped Defendant at that point.

After thoroughly reviewing the record, the Court determines Officer Crider's testimony was credible and Defendant did not successfully impeach his testimony or show Officer Crider did not witness the failure to stop. In addition, Defendant does not contend he properly stopped at the intersection. Since Officer Crider had probable cause to believe Defendant had committed a violation of Tennessee law, the stop did not violate the Fourth Amendment.

### 2. Scope and Duration of Detention

Defendant objects to the finding the scope of the traffic stop was not excessive. Defendant argues Officer Crider unlawfully prolonged the traffic stop to look for drugs and took no action to cite Defendant for the traffic violation.

While the police may stop a vehicle for any traffic infraction, detention beyond the scope of the initial stop requires reasonable suspicion of criminal activity. "[S]ome activity must occur during the initial stop which raises reasonable suspicion in order to justify further detention that is unrelated to the initial traffic stop." *United States v. Bradshaw*, 102 F.3d 204, 212 (6th Cir. 1996). The Court must decide "whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion." *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993). The Court then determines whether the degree of intrusion was "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 20 (1968). The detention is reasonable if it is "sufficiently limited in time" and "the investigative means used [were] the least intrusive means reasonably available." *Bennett v. City of Eastpointe*, 410 F.3d 810, 825-26 (6th Cir. 2005).

5

The Court of Appeals for the Sixth Circuit has held "continuing to detain a motorist does not become unlawful just because the officer has determined in his own mind not to pursue the traffic violation." *United States v. Herbin*, 343 F.3d 807, 810 (6th Cir. 2003) (citing *Ohio v. Robinette*, 519 U.S. 33, 38 (1996)). As long as the detention does not last longer than was reasonably necessary to complete the purpose of the stop, the seizure is not unreasonable. *United States v. Bell*, 555 F.3d 535, 541 (6th Cir. 2009)). The officer's actions must be reasonably related to the purpose of the stop and not unreasonably delay the stop. *Id.* at 542. An officer can request a driver's license and registration and run computer checks on them without exceeding the scope of a traffic stop. *United States v. Hill*, 195 F.3d 258, 269 (6th Cir. 1999). The officer can also order the driver out of the vehicle to be patted down for weapons. *Arizona v. Johnson*, 129 S. Ct. 781, 786 (2009). "An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Id.* at 788 (citing *Muehler v. Mena*, 544 U.S. 93, 100-01 (2005)). An officer may ask a handful of questions, including asking for consent to search the vehicle, and not unreasonably detain an individual. *United States v. Burton*, 334 F.3d 514, 518 (6th Cir. 2003).

In this case, Officer Crider made limited inquiries regarding the possession of guns or drugs before returning to his vehicle to check on Defendant's license. While he was in the patrol car, he saw Defendant's head dip down and reasonably suspected Defendant was retrieving or hiding contraband or a weapon. Officer Crider returned to Defendant's vehicle and, after questioning him about his conduct, ordered him out of the vehicle to perform a pat-down search. Officer Crider then began searching the vehicle. Since Officer Crider made reasonable inquiries before obtaining Defendant's consent to search the vehicle and did not prolong the duration of the stop, the scope and

6

duration of the traffic stop was reasonable.

### 3. Consent to Search

Defendant contends consent was not validly given. He does not argue the scope of the consent did not extend to the search conducted by Officer Crider. Defendant asserts the government did not meet its burden of proving consent and the consent was not voluntary.

The Fourth Amendment is not violated where the government proves the defendant gave valid consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). Consent is valid where it is "unequivocally, specifically, and intelligently given, uncontaminated by any duress and coercion." *United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999) (quoting *United States v. Tillman*, 963 F.2d 137, 143 (6th Cir. 1992)) (internal quotation marks omitted). The government bears the burden of proving consent by a preponderance of the evidence. *United States v. Canipe*, 569 F.3d 597, 602 (6th Cir. 2009). "[M]ere acquiescence does not suffice to establish free and voluntary consent." *Id.* at 603 (quoting *United States v. Moon*, 513 F.3d 527, 538 (6th Cir. 2008)) (internal quotation marks omitted). In determining whether consent was valid, relevant considerations include:

> the accused's characteristics and the details of the interrogation, including the youth of the accused, his lack of education, his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of the detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep.

*Id.* (citing *Schneckloth*, 412 U.S. at 226). The officer need not inform the accused of the right to refuse consent, although it is a factor to be considered in

Although Officer Crider could not recall the exact words used by Defendant, he testified Defendant volunteered his consent to search the vehicle after Officer Crider asked him if he had weapons or narcotics in the vehicle. Although Defendant later told Officer Crider he gave consent

7

because he thought Officer Crider would search the car anyway, at the time Defendant gave consent, he was not acquiescing to a request to search. In addition, the length of detention was short and Officer Crider asked very few questions before Defendant volunteered his consent. Although Officer Crider did not tell Defendant he had the right to refuse consent, since Officer Crider did not ask for permission, Defendant volunteered his consent, the danger of coercion or duress is minimal. Under the circumstances, there is no indication Defendant was coerced into consenting. As the consent was free and voluntary, it was valid. In addition, since Defendant never withdrew his consent, the search of the vehicle was lawful.

### 4. Fruit of the Poisonous Tree

Defendant argues his statements should be suppressed under the fruit of the poisonous tree doctrine because the initial stop and subsequent search of the vehicle were unconstitutional. Since the Court found Defendant's Fourth Amendment rights were not violated, the fruit of the poisonous tree doctrine does not apply and Defendant's statements should not be suppressed.

### B. Fourteenth Amendment

Defendant contends Officer Crider violated the Equal Protection clause of the Fourteenth Amendment by selectively enforcing traffic laws on the basis of race, gender, and age. Judge Carter concluded *United States v. Nichols*, 512. F.3d 789 (6th Cir. 2008), barred suppression of evidence as a remedy for equal protection violations. Defendant objected and argues *Nichols* does not definitively foreclose suppression of evidence in criminal cases involving violations of equal protection.

While the Fourth Amendment disregards an officer's personal motivations, the Equal Protection Clause prohibits "selective enforcement of the law based on considerations such as race."

8

*Whren*, 517 U.S. at 813. In order to prevail on an equal protection claim, the defendant must prove purposeful discrimination by the decision maker in his case. *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987). The issue in this case, however, is not whether Defendant can prevail on his equal protection claim, but whether suppression of evidence is an available remedy.

In *Nichols*, the Sixth Circuit backed away from prior dicta, which suggested an equal protection claim could result in the suppression of evidence, to state "suppression is an extreme remedy and that--prior to adopting such a remedy--a court must be convinced of the inadequacy of civil suits to safeguard against constitutional violations." 512 F.3d at 795. Recent cases from the Supreme Court have declined to apply the exclusionary rule even in Fourth Amendment cases. *See Hudson v. Michigan*, 547 U.S. 586 (2006) (holding suppression of evidence is not an appropriate remedy for violation of the "knock-and-announce" rule); *Herring v. United States*, 129 S.Ct. 695 (2009) (noting the exclusionary rule does not necessarily apply when a Fourth Amendment violation has occurred and refusing to suppress evidence obtained as the result of a police mistake).

As the Sixth Circuit noted in *Nichols*, no court has suppressed evidence for a violation of the Fourteenth Amendment's Equal Protection Clause. 512 F.3d at 794 (noting the New Jersey Supreme Court adopted an exclusionary rule under the New Jersey state constitution). While Defendant attempts to distinguish *Nichols*, the Sixth Circuit's holding is not limited to the facts. The Sixth Circuit clearly determined civil actions under 42 U.S.C. § 1983 are the appropriate remedy for violations of the Equal Protection Clause and the exclusionary rule does not apply. *Nichols*, 512 F.3d at 794-95.

Judge Carter correctly determined the Sixth Circuit ruling in *Nichols* precluded application of the exclusionary rule to a violation of the Equal Protection Clause. As such, Defendant's motion

9

to suppress evidence for an alleged violation of the Fourteenth Amendment will be denied.

IV.    **CONCLUSION**

For the reasons stated, the Court will **ACCEPT** and **ADOPT** the Reports and Recommendations (Court File Nos. 30, 34) and will **DENY** Defendant's motions to suppress (Court File Nos. 16, 22).

An Order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**